UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAMIAN A. OUELLETTE, | ) | 1:19-CR-00011-LEW |
| | ) | |
| Defendant | ) | |

**ORDER ON GOVERNMENT'S OBJECTION
TO PRESENTENCE REPORT**

On January 30, 2019, Defendant Damian Ouellette pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In the Revised Presentence Investigation Report ("PSR"), the Probation Office determined Mr. Ouellette's base offense level to be 14 as he was a "prohibited person" at the time he committed the instant offense. *See* U.S.S.G. § 2K2.1(a)(6)(A). The government objected, asserting that because Mr. Ouellette had previously sustained a felony conviction of robbery with a dangerous weapon – in its estimation, a "crime of violence," as defined in U.S.S.G. § 4B1.2 – his base offense level should be 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A). For the reasons below, I conclude, albeit with deep reservations, that Mr. Ouellette's prior conviction of robbery qualifies as a "crime of violence" and, therefore, his base offense level is 20.

**DISCUSSION**

Under the current iteration of United States Sentencing Guidelines § 4B1.2, a prior conviction qualifies as a "crime of violence" in one of two ways. First, under the "force clause," a prior felony conviction is considered a crime of violence if the offense charged "has

as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Second, under the "enumerated offenses clause," nine specific crimes – including robbery – are identified as offenses that categorically qualify as crimes of violence. *Id.* § 4B1.2(a)(2).

The parties focus their arguments on whether Mr. Ouellette's prior robbery[1] conviction – and particularly the requisite degree of force entailed by that conviction – qualifies as a crime of violence under the enumerated offenses clause. A plain reading of this clause might lull a casual observer into a false sense of clarity because robbery is among the enumerated offenses. However, that inclusion "does not end the required analysis." *United States v. Childers*, No. 1:16-CR-00079-JAW, 2017 WL 2559858, at *10 (D. Me. June 13, 2017). Instead, because robbery is left undefined in the Guidelines, I must apply the analytical framework established in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether the prior state conviction qualifies as a "crime of violence." *United States v. Ramirez*, 708 F.3d 295, 300 – 302 & n.8 (1st Cir. 2013).

---

[1] In 2013, Mr. Ouellette was indicted for violation of 17-A M.R.S. § 651(1)(E). Gov't Ex. A (charging that Mr. Oullette was "armed with a dangerous weapon, brass knuckles" when he "commit[ed] or attempt[ed] to commit theft" and "threaten[ed] to use force against [the victim] . . . with the intent to prevent or overcome resistance to the taking of the property, or the retention of the property immediately after the taking, or to compel the person in control of the property to give it up or to engage in other conduct which aided in the taking or carrying away of the property."). On May 8, 2013, Mr. Ouellette entered a nolo contendere plea and was convicted of robbery with a dangerous weapon. Gov't Exs. B, C.

The parties do not attempt to revisit the distinction between robbery and robbery with a dangerous weapon. As explained by the government:

> The Government is not arguing, in this case, that this Court should give weight in this determination to the fact that the defendant was convicted of an armed robbery. In making that decision here, the Government is guided by the First Circuit's interpretation of the Massachusetts robbery statute in *United States v. Starks*, 861 F.3d 306, 320 (1st Cir. 2017) (no basis for concluding that armed robbery requires a greater degree of force than unarmed robbery).

Gov't. Sentencing Mem., 5 n.1.

2

The first step is determining the applicability of either the categorical or modified categorical approach. The categorical approach is essentially the default rule; it is used unless the "defendant's prior conviction is for violating a 'divisible statute' – i.e., a statute that 'sets forth one or more elements of a particular offense in the alternative.'" *United States v. Ramos-Gonzalez*, 775 F.3d 483, 505 (1st Cir. 2015) (quoting *United States v. Fish*, 758 F.3d 1, 6 (1st Cir. 2014)). Using either the categorical or modified categorical approach, the court then isolates the elements of the crime of conviction (and not the defendant's actual, related conduct) and compares those elements to the elements of the "generic definition of the enumerated offense." *Ramirez*, 708 F.3d at 302 n.8*; see also Taylor*, 495 U.S. at 598 (requiring the distillation of the "generic, contemporary meaning" of an enumerated offense); *Descamps v. United States*, 570 U.S. 254, 257 (2013) ("[Courts] compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime – i.e., the offense as commonly understood."). If comparison reveals that the Maine robbery statute has the same elements as the generic crime of robbery or is narrower than generic robbery, then the prior robbery conviction qualifies as an enumerated offense under the Guidelines. *Childers*, 2017 WL 2559858, at *10 – 11. If, however, the "statute sweeps more broadly than the generic crime," the prior conviction will not qualify. *Descamps*, 570 U.S. at 261.

**A.     Inquiry I: Crime of Conviction**

In a curious departure from the bedrock principle undergirding the Sentencing Guidelines – "relevant conduct" – I am required to scrutinize "the statutory definitions of the prior offenses, and not . . . the particular facts underlying those convictions" through the lens of either the categorical or modified-categorical approach. *Taylor*, 495 U.S. at 600. While

3

the resolution of this inquiry is "no walk in the park," *United States v. Mulkern*, 854 F.3d 87, 90 (1st Cir. 2017), my task has been simplified by the First Circuit's conclusion that 17-A M.R.S. § 651[2] is divisible and, thus, the modified-categorical approach applies. *Id.* at 91. Under the modified-categorical approach, I may rely on Shepard[3] documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. *Id.* (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

The parties agree that the indictment indicates Mr. Ouellette pleaded guilty to a violation of 17-A M.R.S. § 651(1)(B) (robbery), to include § 651(1)(E) (armed robbery). The parties' arguments focus on subsection (B),[4] which defines robbery as "commit[ing] or

---

[2] At the time of Ouellette's conviction, Maine defined "robbery" as follows:

1. A person is guilty of robbery if the person commits or attempts to commit theft and at the time of the person's actions:
   A. The actor recklessly inflicts bodily injury on another. Violation of this paragraph is a Class B crime:
   B. The actor threatens to use force against any person present with the intent:
      (1) To prevent or overcome resistance to the taking of the property, or to the retention of the property, or to the retention of the property immediately after the taking; or
      (2) To compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;
   C. The actor uses physical force on another which the intent enumerated in paragraph B, subparagraphs (1) or (2);
   D. The actor intentionally inflicts or attempts to inflict bodily injury on another; or
   E. The actor or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.

17-A M.R.S. § 651(1).

[3] *See Shepard v. United States*, 544 U.S. 13, 26 (2005).

[4] As explained by the Defendant: "It appears that §651(1)(E) was charged because an accomplice was armed. The government has acknowledged that this fact does not play a role in its argument for applying the enhancement." Def.'s Mem., 2.

4

attempt[ing] to commit theft" and "threaten[ing] to use force against any person present with the intent: (1) To prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or (2) To compel the person in control of the property to give it up or to engage in other conduct that aids in the taking or carrying away of the property." 17-A M.R.S. § 651(1)(B). The Legislature separately criminalized robbery effectuated through the actual use of force in subsection (C) of the robbery statute.

In *Raymond v. State*, the Maine Supreme Judicial Court addressed the degree of force required to qualify as robbery under 17–A M.R.S. § 651(1)(C) and, specifically, whether the act of snatching a bag from the victim's hand was sufficient to sustain a conviction. 467 A.2d 161, 162 (Me. 1983). The Law Court sustained the defendant's conviction, and it held that "*any* physical force with the intent [to deprive] should be sufficient to raise a theft offense to the level of robbery." *Id.* at 165. *See also Mulkern*, 854 F.3d at 93 (citing *Raymond* to like effect). In other words, in Maine, the degree of force required to commit "actual force" robbery is "any physical force," including the force necessary to snatch an item of property from someone's grasp. Defendant argues that because mere "snatching" force would suffice to sustain a robbery conviction in Maine, his conviction is *per se* not a crime of violence. Def.'s Mem. 3. Defendant argues it does not matter that his conviction was under § 651(1)(B) (robbery by threat) rather than § 651(1)(C) (robbery by use of force). He cites *Mulkern* in support of his position, observing that the First Circuit there stated it made no difference for purposes of the force clause of the Armed Career Criminal Act. *Id.*, citing *Mulkern*, 854 F.3d at 93-94. I am not persuaded. In *Mulkern*, the Court considered whether a Maine robbery conviction implied a degree of force "capable of causing physical pain or injury," following the guidance set by the Supreme Court in *Johnson v. United States*, 559 U.S. 133, 140 (2010).

See *Mulkern*, 854 F.3d at 93-94. Here, on the other hand, I consider whether a Maine robbery conviction predicated on a threat of force is a "generic" robbery conviction, based on the contemporary understanding of robbery among the several States.

**B.      Inquiry II: Generic, Contemporary Definition**

The second inquiry dictated by the *Taylor* framework is more difficult: what is "generic robbery" – more specifically, what degree of force is encompassed by the robbery offense identified in U.S.S.G. § 4B1.2(a)(2)– and how is it divined? *Taylor* instructs that I must determine the "generic, contemporary meaning" of the charged offense through an examination of how "the term is now used in the criminal codes of most States" and, at times, supplemented by a review of the Modern Penal Code and contemporary treatises. 495 U.S. at 589, 598 & n.8 (indicating that the "modern 'generic' view" of a crime "roughly correspond[s] to the definitions of [the crime found] in a majority of the States' criminal codes."). The First Circuit has not yet determined the generic definition of robbery. However, it has held that a state robbery conviction under a statute that requires at least the threat of bodily injury "substantially corresponds to the definition of generic robbery." *United States v. Ball*, 870 F.3d 1, 6 (1st Cir. 2017) (applying 2015 Guidelines Manual, § 4B1.2 application note listing robbery as an exemplar crime of violence). Here we ponder a state statute that allows a robbery conviction to stand on use of "any force," so *Ball* is not decisive. Additionally, the First Circuit has yet to prescribe the proper methodology for determining the generic definition of a crime. As I see it, the inquiry boils down to what amount of force must be threatened to support a conviction for "generic" robbery and whether that amount of force corresponds with the minimal requirements of Maine law.

While the First Circuit has not yet prescribed a ready answer, other circuit courts have sanctioned two approaches leading to divergent assessments concerning the amount of force needed to commit generic robbery. Some circuits conclude that the majority of state criminal codes provide that generic robbery requires no more than *de minimis* force. *See United States v. Graves*, 877 F.3d 494, 503 (3d Cir. 2017), *cert. denied*, 139 S. Ct. 159 (2018) ("We now join the Seventh and Eleventh Circuits and hold that generic robbery requires no more than *de minimis* force."); *United States v. Molinar,* 881 F.3d 1064, 1073 (9th Cir. 2017) ("Again, the generic definition of robbery encompasses not only de minimis force sufficient to compel acquiescence to the taking of or escaping with property, but also the implied threat of force." (footnote omitted)). Looking to the Model Penal Code and state laws defining robbery, the *Graves* court noted a fundamental "disjunction": "[T]he MPC requires that there be some actual or threatened injury to another person for a theft to qualify as robbery. . . . [H]owever, there are thirty-eight states which define robbery as theft involving the use of even de minimis force." *Graves*, 877 F.3d at 502. Relying on its reading of *Taylor*, the *Graves* court concluded that "the most important factor in defining the generic version of an offense is the approach of the majority of state statutes defining the crime." *Id.* at 504. It reasoned:

> Affording predominant weight to the majority of states best recognizes that "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity." While the MPC is a useful starting point, its definition of 'robbery' does not supersede the way in which the majority of states have defined that offense.

*Id.* (footnotes omitted, quoting *United States v. Booker*, 543 U.S. 220, 253 (2005)). Similarly, the Ninth Circuit in *Molinar* relied primarily on the definition of robbery in the majority of states to conclude that generic robbery encompasses even *de minimis* force. *Molinar*, 881 F.3d at 1072.

7

Other circuits conclude that generic robbery requires the application of something more than minimal force. *United States v. Gattis*, 877 F.3d 150, 159 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1572 (2018) ("[J]ust like generic robbery committed through the use of force, to commit robbery by force in North Carolina, the defendant must do more than stealthily pickpocket or suddenly snatch; he must direct a degree of force towards the victim beyond the minimum necessary to remove the item from the victim's grasp."); *United States v. Yates*, 866 F.3d 723, 730, 734 (6th Cir. 2017) (holding that generic robbery requires the application of more than "minimal use of force"; looking instead to whether the circumstances presented immediate danger to the victim); *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006) (same, abrogated on other grounds). In arriving at this conclusion, the Sixth Circuit, for example, relies on contemporary scholars to do the heavy lifting of analysis and, considering the effort of combing through and keeping tabs on the ever-changing whims of legislative fancy, this approach is perfectly understandable. The additional appeal to this approach is in its near immutability, which makes marginally easier the task of applying the modified-categorical approach.

Nevertheless, *Taylor* appears, quite plainly, to require me to give priority of importance to how robbery is now used in the criminal codes of most States and subordinate consideration to how the Model Penal Code classifies the offense[5] or how scholars have characterized the

---

[5] As noted by the *Graves* court:

> The MPC defines "robbery" as requiring one of three things to occur in the course of committing a theft: the offender must "(a) inflict[ ] serious bodily injury upon another; or (b) threaten[ ] another with or purposively put him in fear of immediate serious bodily injury; or (c) commit[ ] or threaten[ ] immediately to commit any felony of the first or second degree." Thus, the MPC requires that there be some *actual or threatened injury to another person* for a theft to qualify as robbery.

*Graves*, 877 F.3d at 502 (emphasis added); *see also* Model Penal Code § 222.1.

variations in state criminal codes. *Taylor*, 495 U.S. at 598. After reviewing the multitude of statutory provisions defining robbery across the states (including Puerto Rico and the District of Columbia), I conclude that Maine's divisible robbery statute may not be entirely generic in application insofar as it encompasses the act of snatching property from the grip of an unsuspecting and therefore non-resistant victim. However, as applied to robbery by threat, which Plaintiff was convicted of, Maine law appears to be generic in its application because most other states similarly treat dispossession by threat of force as robbery. In a threat scenario, unlike a snatch scenario, one deprives another person of property by threat of using, categorically, whatever degree of force is needed to forcibly overcome any resistance that is offered.[6] Indeed, any lesser degree of force would not be a "threat." Consequently, Defendant's prior conviction for robbery (by threat) rests in the heartland of most states' definitions of robbery (by threat),[7] and therefore, is coextensive with "generic robbery."

---

[6] The Supreme Court recently held, in a separate but analogous context (the ACCA elements clause), that the well-established common law understanding of robbery has long required the use of a degree of force sufficient to overcome resistance, "however slight the resistance." *Stokeling v. United States*, 139 S. Ct. 544, 551 (2019) (quoting W. Clark & W. Marshall, Law of Crimes 553 (H. Lazell ed., 2d ed. 1905)). The Court also decidedly opined that, at least as of the 1986 amendment of the ACCA, it was well-established in the common law that the force inherent in the crime of robbery does not encompass the mere "snatching" of property. *Id.* at 555.

[7] Many distinctions could be drawn between the various state statutes. However, for purposes of my inquiry, I focus on the force dictated by the statutory text of each state's definition of robbery. The statutory language varies; however, like the Maine subsection at issue in this case, 25 states and Puerto Rico define robbery to include theft accomplished through the threat of force (and sometimes, even fear) – a degree of force that falls short of the Model Penal Code's severity standard requiring infliction or threat of physical harm or bodily injury. For example, in Arizona, an individual commits robbery if they, "in the course of taking any property of another from his person or immediate presence and against his will, . . . threaten[] . . . force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." Ariz. Rev. Stat. Ann. § 13-1902(A). *See also* Ala. Code § 13A-8-43(a); Alaska Stat. Ann. § 11.41.510(a); Ark. Code Ann. § 5-12-102(a); Cal. Penal Code § 211; Colo. Rev. Stat. Ann. § 18-4-301(1); Conn. Gen. Stat. § 53a-133; Del. Code Ann. tit. 11, § 831(A); Fla. Stat. Ann. § 812.131(1); Haw. Rev. Stat. Ann. § 708-841(1); Idaho Code Ann. § 18-6501; 720 Ill. Comp. Stat. Ann. 5/18-1(a); Ind. Code Ann. § 35-42-5-1(a); Ky. Rev. Stat. Ann. § 515.030(1); La. Stat. Ann. § 14:65(A); 17-A M.R.S. § 651(1)(B); Minn. Stat. Ann. § 609.24; N.H. Rev. Stat. Ann. § 636:1(I); N.Y. Penal Law § 160.00; Okla. Stat. Ann. tit. 21, § 791; Or.

While I believe this survey approach is the most faithful to the Supreme Court's guidance, I have deep reservations regarding its practical implications. In order to accurately assess a contemporary definition of robbery, the district judge is obligated to periodically distill the perpetual potpourri of changes to state criminal codes. Moreover, it would suggest that in Maine a conviction for robbery by threat might increase the base offense level of a firearm possession conviction, whereas a conviction for robbery by actual use of force,

---

Rev. Stat. Ann. § 164.395(1); P.R. Laws Ann. Tit. 33, § 4826; 11 R.I. Gen. Laws Ann. § 11-39-1(b); S.D. Codified Laws § 22-30-1; Utah Code Ann. § 76-6-301(1); Wis. Stat. Ann. § 943.32(1).

In contrast, 11 states, along with the Model Penal Code, appear to require a rather dire threat for a robbery conviction, such as would arise from an armed robbery scenario, i.e., a threat of force likely to result in immediate bodily injury. For example, Pennsylvania law states that "[a] person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa. Stat. and Cons. Stat. Ann. § 3701(a)(1)(ii). *See also* Iowa Code Ann. § 711.1(1)(b); Miss. Code. Ann. § 97-3-73; Mo. Ann. Stat. §§ 570.025, 570.010(13); Mont. Code Ann. § 45-5-401(1); N.J. Stat. Ann. § 2C:15-1(a); N.D. Cent. Code Ann. § 12.1-22-01(1);; Tex. Penal Code Ann. § 29.02(a); Vt. Stat. Ann. tit. 13, § 608(a); Va. Code Ann. § 18.2-58; Wyo. Stat. Ann. § 6-2-401(a).

Straddling the gap between these two definitions, 14 states and the District of Columbia criminalize the use of force using qualifiers such as "bodily injury" or "violence," yet also criminalize conduct that would generate "fear." *See* D.C. Code Ann. § 22-2801 ("Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery"); Ga. Code Ann. § 16-8-40(a); Kan. Stat. Ann. § 21-5420(a); Mass. Gen. Laws Ann. ch. 277, § 39; Md. Code Ann., Crim. Law § 3-401 (adopting the "judicially determined meaning" of robbery); *State v. Stewart*, 211 A.3d 371, 385 (Md. 2019) ("This Court has discussed robbery as the taking and carrying away of the personal property of another from his [or her] person or in his [or her] presence by violence or putting in fear." (internal quotation marks omitted); Mich. Comp. Laws Ann. § 750.530(1); Neb. Rev. Stat. Ann. § 28-324(1); Nev. Rev. Stat. Ann. § 200.380(1) (as amended by 2019 Nevada Laws Ch. 76 (S.B. 137)); N.M. Stat. Ann. § 30-16-2; N.C. Gen. Stat. Ann. § 14-87.1 (adopting the common law definition of robbery); *North Carolina v. Smith*, 292 S.E.2d 264, 270 (N.C. 1982) (defining common law robbery as "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear"); Ohio Rev. Code Ann. § 2911.02; S.C. Code Ann. § 16-11-325 (adopting the "common law offense of robbery"); *State v. Rosemond,* 560 S.E.2d 636, 640 (S.C. Ct. App. 2002) ("Robbery is defined as the felonious or unlawful taking of money, goods or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear."); Tenn. Code Ann. § 39-13-401; Wash. Rev. Code Ann. § 9A.56.190; W. Va. Code Ann. § 61-2-12(c). For purposes of this tallying approach, because these statutes criminalize conduct sufficient to cause fear, I include them with those, like Maine, which criminalize the threat of force sufficient to overcome resistance.

In sum, 39 states, the District of Columbia, and Puerto Rico, based on the plain language of the relevant statutes, criminalize the threat of force and do not require the heightened standard of a threat of such force as would necessarily impose physical harm. In other words, it is generic/typical for robbery to encompass the taking of property from another through the threat of force sufficient to dispossess, and not merely through application of force sufficient to harm.

10

currently classified as a more serious offense in Maine, might not. These vagaries produced by the categorical approach are nothing new.

Among the many advantages of Congress or the Sentencing Commission eventually using plain language to define "crime of violence" is that we might geometrically enhance our prospects of shared understanding. This would be particularly useful in what should be a transparent, predictable and uniform approach to federal sentencing. A criminal defendant ought not have to wait with bated breath while a federal judge counts how many angels can dance on the head of a pin in arriving at a base offense level. It appears that out of an effort toward metaphysical certainty, which gave us the current conundrum, we are left with all metaphysics but no certainty. This component of the Guidelines sows only disparity and confusion which, as the First Circuit so aptly put it, results in "a Rube Goldberg jurisprudence of abstractions piled on top of one another in a manner that renders doubtful anyone's confidence in predicting what will pop out at the end."[8] *United States v. Tavares*, 843 F.3d

---

[8] Although lengthy, the First Circuit's frustrations specific to the application of the "elements clause" under the Guidelines on this point bear repeating in full:

> Even a careful reader of this opinion may at this point feel lost. We began with a seemingly simple question. Has Tavares been convicted of a crime of violence? Trying to answer that question then led us down several rabbit holes . . . .
>
> In a sensible world, Congress and/or the Sentencing Commission would have made a list of state and federal laws deemed to be crimes of violence that warranted the desired penalties and sentencing enhancements. At its margins, such a list might be over- or under-broad. It would, though, be straightforward.
>
> Instead of using a simple list, the drafters adopted abstract descriptions of the crimes that would appear on such a list, employing terms such as "physical force," "use," "injury," and so on. The result is a Rube Goldberg jurisprudence of abstractions piled on top of one another in a manner that renders doubtful anyone's confidence in predicting what will pop out at the end. *Cf. Almanza–Arenas v. Lynch*, 815 F.3d 469, 483–84 (9th Cir. 2015) (en banc) (Owens, J., concurring).
>
> What pops out matters a great deal. In *Fish*, one could not know whether certain conduct was lawful or criminal unless one knew whether a prior crime was a crime of violence. Here,

1, 19 (1st Cir. 2016) (untangling whether a defendant's prior offenses qualify as "crimes of violence" under the former residual clause of § 4B1.2(a)(2))).

I am hardly the first and, I predict, will not be the last federal judge to shout into the wind on this point.[9] There is cause for optimism that change might soon be on the way.[10] In the meantime, I am particularly mindful that the Guidelines are merely advisory. However, if the Guidelines are to provide a meaningful heartland for federal sentencing, we ought not to confuse painting over the stained ceiling with fixing the leaking roof.

Despite the frustration with which I apply this convoluted standard, which, in my view, only undercuts the ability of the Guidelines to effectively fulfill its role as "the lodestone of sentencing," *Peugh v. United States*, 569 U.S. 530, 544 (2013), I conclude that for purposes of the Sentencing Guidelines, a Maine conviction for robbery by threat counts as a predicate crime of violence because the offense, categorically, is a generic robbery offense.

## CONCLUSION

For the foregoing reasons, Mr. Ouellette's prior robbery conviction qualifies as a "crime of violence," as enumerated in U.S.S.G. § 4B1.2(a)(2). Therefore, the Government's

---

> Tavares could not know—within years—the guidance applicable to his sentencing. Nor could one get confident answers by asking a lawyer—or even a judge. So what do we do here?

*United States v. Tavares*, 843 F.3d 1, 19 (1st Cir. 2016).

[9] In particular, I appreciate the sentiment expressed by Judge Owens: "I continue to urge the Commission to simplify the Guidelines to avoid the frequent sentencing adventures more complicated than reconstructing the Staff of Ra in the Map Room to locate the Well of the Souls." *United States v. Perez-Silvan*, 861 F.3d 935, 944 (9th Cir. 2017) (Owens, J., concurring) (citing Raiders of the Lost Ark (Paramount Pictures 1981)).

[10] It should be noted that in response to criticisms that the categorical approach is an "overly complex, time consuming, resource-intensive analysis that often leads to litigation and uncertainty" and concerns that the definition of "generic robbery" is underinclusive, the Sentencing Commission proposed amendments to the Federal Sentencing Guidelines in December 2018 that proposed three potential definitions for robbery. *Sentencing Guidelines for United States Courts*, 83 Fed. Reg. 65,400, 65,408, 65,411-12 (Dec. 20, 2018).

objection is **ALLOWED**, and I calculate Mr. Ouellette's base offense level as 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A).

**SO ORDERED.**

**Dated this 17th day of September, 2019**

/s/ Lance E. Walker
**LANCE E. WALKER**
**UNITED STATES DISTRICT JUDGE**